(No. 40969.—

U.S. INDUSTRIES, PRODUCTION MACHINE DIVISION, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(Willard Schmidt, Appellee.)

*Opinion filed September 24, 1968.*

470

ANGERSTEIN & ANGERSTEIN, of Chicago, (THELMA BROOK SIMON, JAMES F. GORMAN, and SIDNEY Z. KARASIK, of counsel,) for appellant.

KOHLER & MERRICK, of Chicago, (VINCENT F. KOHLER and JAMES W. WOMACK, of counsel,) for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

This workmen's compensation case presents the sole issue of whether injuries suffered by Willard Schmidt (claimant), an employee of U.S. Industries, in an automobile accident arose out of and in the course of his employment. An arbitrator held they did not and denied compensation, the Industrial Commission reversed and its award was affirmed by the trial court. For the reasons hereinafter given we agree with the arbitrator and reverse.

Willard Schmidt was employed as an inspector and repairer of forging presses marketed by his employer, and he traveled about the country servicing presses sold by his employer. One such machine had been installed in the Latrobe Steel Company plant in Latrobe, Pennsylvania, and Schmidt had been sent there on a number of occasions

when difficulty with the press developed. The Latrobe Company was unhappy about the machine's failure to perform properly and Schmidt testified his employer was "doing everything possible" to please them. On April 16, 1963, Schmidt again was sent by the employer to the Latrobe plant, arriving at the Coraopolis (Greater Pittsburgh), Pennsylvania, airport, some 60 miles from the plant, about 10:00 or 11:00 A.M., where he rented a car and arranged for accommodations at a motel some four miles from the plant. He next went to the plant, disassembled the machine, called his employer in Chicago from the plant and ordered certain parts for the forging press to be shipped from Chicago by air. Schmidt stated he then went to the motel between 5:30 and 6:00 P.M., washed up, watched television until about 7:30, showered and then dined at the motel restaurant, including two highballs. Thereafter he returned to his room, changed clothes and watched the 9:30 movie on television. Before watching the movie he called the airport to ascertain whether the parts had arrived and was told to call and check on later flights. About midnight he drove up into the mountains in a direction different from that of the plant since "It was such a warm night in the Spring, so I decided to take a ride". About 1:30 A.M., while driving down out of the mountains, he fell asleep and the car struck a monument in the town square of Ligonier, Pennsylvania, a town several miles distant from the motel in a direction other than that of the plant. It is for the injuries suffered in this accident that compensation is sought.

The employee testified he intended to again call the airport after returning to the motel from the ride and see whether the parts had arrived, and that he also intended to drive to the plant that night "to check the pistons". Replacements for the pistons had been ordered that afternoon by him, but he testified the chief engineer at the plant had been "bothering" him while he was working on the machine

during the day, and that he intended returning to "take another look at these things to make sure I didn't make a mistake"; that he had ordered replacement parts for only one side of the machine and wanted to again check those on the other side. He had told no one, including the attorney who first represented him, of his intention to again call the airport or return to the plant that night other than talking to his present attorney about it, and had not mentioned it to the employer's representative who talked to him in the hospital or at the time they subsequently discussed the accident in the Chicago office.

Schmidt received certain group insurance benefits as a result of answering in his own handwriting the following question on a form application given him by the employer's personnel director when the latter called upon him at the Latrobe hospital:

"Q. Did injury occur while on duty?

A. No."

It is undisputed that the director at that time told the employee he was entitled to benefits under the group insurance plan but that the Workmen's Compensation Act did not apply.

While the employer devotes considerable argument to its contention that claimant's testimony regarding his intention to call the airport and return to the plant at 1:30 A.M. or later was untrue, the arbitrator specifically stated he was inclined to believe this was true and the Commission impliedly found it to be true. Under these circumstances we are not at liberty to disregard these findings, even though a *de novo* determination by us might differ, for they cannot fairly be said to be against the manifest weight of the evidence. (*Chicago Park District* v. *Industrial Com.*, 36 Ill.2d 212, 217; *City of Collinsville* v. *Industrial Com.*, 36 Ill.2d 425, 429.) However, this aspect of the testimony is not, in our judgment, necessarily determinative of compensability, for the circumstances under

which this employee worked differ substantially from those in many of the cases cited by counsel, such as *Public Service Co.* v. *Industrial Com.,* 395 Ill. 238; *Mills* v. *Industrial Com.,* 27 Ill.2d 441, and others, which are basically concerned with employees whose duties are performed within the community or area where the employer's physical facilities are located. Deviations from the normal performance of duty which would not be viewed as reasonable under the rule that the injury "must arise out of and in the course of" the employment when made by locally employed persons, might be quite reasonable for the employee whose duties take him to distant places and unknown areas. However, the burden, of course, rests upon the employees (*Canhan Sheet Metal Corp.* v. *Industrial Com.,* 31 Ill.2d 325), and it is not sufficient to prove a causal connection between the injury and the employment to merely establish that he would not have been where the injury occurred except for his employment. *Rysdon Products Co.* v. *Industrial Com.,* 34 Ill.2d 326, 329; *Christian* v. *Chicago & Illinois Midland Railway Co.,* 412 Ill. 171, 175-6.

In our judgment the rule to be applied in determining compensability of injuries to those whose employment requires extensive travel is exemplified in cases such as *Ace Pest Control, Inc.* v. *Industrial Com.,* 32 Ill.2d 386, 388, where we said, "The Workmen's Compensation Act was not intended to insure employees against all accidental injuries but only those which arise out of acts which the employee is instructed to perform by his employer; acts which he has a common law or statutory duty to perform while performing duties for his employer [citations]; *or acts which the employee might be reasonably expected to perform incident to his assigned duties.* [Citations.] It is clear that in this case the deceased employee was not acting under express instructions when he stopped to render assistance to Mrs. Kuntz and her children nor was he under any statutory or common law duty to give such aid. [Citation.] The

issue thus narrows to whether the giving of such aid could have been reasonably expected or foreseen." (Emphasis added.) We there affirmed an award to a traveling employee who had deviated from his normal route in rendering assistance to a stranded motorist and her children, holding such conduct reasonable and foreseeable, particularly in view of the employer's testimony that "I have assisted motorists stranded along the road" and that he considered the company truck with company advertising thereon to be a "moving billboard". (32 Ill.2d at 388.) We also noted that the employee there at the time of injury had returned to the point of his original route at which he first stopped to render assistance. In *Mills* v. *Industrial Com.*, 27 Ill.2d 441, 445, we reversed an award of compensation because "the employee's actions resulting in the injury were neither required by the employer, known to the employer, nor reasonably to be anticipated by the employer, * * *." (See, also, *J. E. Porter Co.* v. *Industrial Com.*, 301 Ill. 76, 79; *Central Garage of La Salle* v. *Industrial Com.*, 286 Ill. 291; *Christian* v. *Chicago & Illinois Midland Railway Co.*, 412 Ill. 171, 174; *Loyola University* v. *Industrial Com.*, 408 Ill. 139, 144.

It is clear that injuries to employees whose duties require them to be elsewhere than in their home communities are not governed by the rules ordinarily applied to others. Accidents occurring while an employee is going to or from his employment are not normally compensable, but this rule is inapplicable where the employee's trip or travel is necessitated by the demands of his employment. (*Thomas Reed & Son* v. *Industrial Com.*, 36 Ill.2d 612, 615; *Lybrand, Ross Bros. & Montgomery* v. *Industrial Com.*, 36 Ill.2d 410, 419; *Urban* v. *Industrial Com.*, 34 Ill.2d 159; *Sjostrom* v. *Sproule*, 33 Ill.2d 40.) Whether an injury to a traveling employee arises "out of and in the course of" his employment and is therefore compensable is to be determined, as we indicated in *Ace Pest Control*, by the reasonableness of

the conduct in which the employee is engaged at the time of injury. As pointed out in Larson's Workmen's Compensation Law, § 25.00, injuries arising out of the necessity of sleeping in hotels and eating in restaurants away from home are usually held compensable, although there exists a considerable lack of unanimity as to the compensability of injuries suffered by traveling employees engaged in activities other than sleeping and eating. (See Larson, §§ 25.21, 25.22, 25.23 and cases there noted.) In the final analysis, the result depends upon the reasonableness of the specific conduct and whether it might normally be anticipated or foreseen by the employer, and it is in this respect that we believe the award of the Industrial Commission must be held contrary to the manifest weight of the evidence. Claimant's action in undertaking a midnight pleasure drive in unfamiliar, mountainous terrain was, in our judgment, a clearly unanticipated, unforeseeable and unreasonable activity not normally to be expected of a traveling employee. As such it bore no reasonable relationship to, and did not arise out of or in the course of, his employment.

The judgment of the circuit court of Cook County is accordingly reversed and the award set aside.

*Judgment reversed; award set aside.*